# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00334-CV

**Jeffrey A. Kendziorski, Appellant**

**v.**

**Don W. Saunders, Appellee**

## FROM THE COMAL COUNTY COURT AT LAW
### NO. 2003CV0037, HONORABLE BRENDA CHAPMAN, JUDGE PRESIDING

## O P I N I O N

Jeffrey Kendziorski sued Robert Marshall for fraud and was awarded compensatory damages and court costs. Marshall appealed the justice court's judgment to the county court, and Don Saunders signed as a surety on the appeal bond. On appeal, Kendziorski was awarded compensatory damages, court costs, and exemplary damages. After Marshall died, Kendziorski attempted to obtain the judgment from Saunders. While admitting liability for the court costs and compensatory damages, Saunders denied liability for exemplary damages. Kendziorski sued Saunders on the grounds that he breached the surety agreement and that he fraudulently entered the

surety agreement with no intention of paying under the terms of the bond and with insufficient assets to cover the limits of the bond. The county court granted partial summary judgment in favor of Kendziorski and concluded that Saunders was liable for compensatory damages and court costs. Subsequently, the court granted Saunders's motion for summary judgment and held that Saunders was not liable for exemplary damages or for fraud. Kendziorski appeals both the partial denial of his summary judgment motion and the granting of Saunders's summary judgment motion. We will affirm the court's judgment regarding Saunders's lack of liability for fraud, reverse the court's judgment regarding Saunders's liability for breach of contract claim and for exemplary damages, and remand the case for consideration of attorney's fees and pre-judgment interest.

## BACKGROUND

Kendziorski sued Marshall for fraud in a justice court and obtained a judgment in the amount of $2,760.50. Marshall appealed the judgment and filed an appeal bond for double the amount of the judgment as required by rule. *See* Tex. R. Civ. P. 571 (allowing 10 days to perfect appeal by filing appeal bond with two or more sureties for double amount of justice court judgment), 574b (appeal from justice court tried de novo in county or district court).

Saunders and another individual signed as sureties on the bond. The bond stated that both sureties "acknowledge ourselves bound to pay JEFFERY A. KENDIORSKI [sic] the sum of $5,521, conditioned that Appellant shall prosecute his appeal to effect, and shall pay off and satisfy the judgment which may be rendered against him on appeal."

2

On appeal and after Saunders signed the surety agreement, Kendziorski specifically pleaded for exemplary damages.[1]  Marshall filed a special exception objecting to the request for exemplary damages on the basis that it constituted an impermissible new ground of recovery under rule of civil procedure 574a.[2]  *See* Tex. R. Civ. P. 574a.

A trial de novo was held, and the county court awarded Kendziorski $1,334 in compensatory damages for fraud, $1,399.44 in court costs, and $5,000 in exemplary damages for fraud.  Prior to the judgment being signed but after the judgment was announced in court, Marshall died.

After making several unsuccessful attempts to obtain the judgment from Marshall's surviving spouse, Kendziorski sent a demand letter to Saunders.  In response, Saunders sent a letter stating that he would pay the compensatory damage award and the court costs but denying liability for exemplary damages.  Saunders also proposed a payment plan and included a check for $250 as the first payment.  In response, Kendziorski stated that he would accept the payment plan only if Saunders agreed to be liable for the full amount of the appeal bond, $5,521.  Saunders refused.

---

[1]  A claim for exemplary damages was not mentioned in Kendziorski's original petition, the final judgment, or the appeal bond.

[2]  Rule 574a provides, in relevant part, as follows:

> Either party may plead any new matter in the county or district court which was not presented in the court below, but no new ground of recovery shall be set up by the plaintiff . . . .

Tex. R. Civ. P. 574a.

After filing suit against Saunders, Kendziorski filed a motion for summary judgment asserting that Saunders had breached the appeal bond by failing to pay the full amount of the bond. The county court granted partial summary judgment in favor of Kendziorski and held that Saunders, as a surety, was liable for the compensatory damages and court costs awarded. However, the county court denied summary judgment regarding Saunders's liability for exemplary damages. Kendziorski then filed a second amended petition adding claims that Saunders fraudulently induced Kendziorski to accept the appeal bond without any intention of paying on the bond and that Saunders falsely stated he had sufficient funds to pay the amount specified in the bond.

In response, Saunders filed a motion for summary judgment urging dismissal of all of Kendziorski's new claims and asking the court to enter judgment that Saunders was not liable for exemplary damages. Specifically, Saunders contended that he did not misrepresent that he had assets sufficient to satisfy the principal of the appeal bond, that he did not misrepresent his intention to pay the surety agreement, and that Kendziorski's claim for exemplary damages was an impermissible additional ground of recovery under rule of civil procedure 574a. *See* Tex. R. Civ. P. 574a.

After considering Saunders's motion for summary judgment, the county court judge sent a letter to both parties that read as follows:

> After review and consideration of Mr. Saunders' Motion for Summary Judgment, the Court finds that it should be granted. The Court finds that Mr. Saunders is not liable for exemplary damages pleaded after the posting of the bond. The Court finds that Mr. Saunders is not liable for fraud damages as he possessed funds at the time he posted the bond sufficient to pay the judgment.
>
> Mr. Saunders is directed to prepare an order accordingly.

The court entered final judgment stating that Saunders was not liable for the exemplary damages originally issued against Marshall or for Kendziorski's fraud claims against Saunders. The court further found that each party was responsible for its own attorney's fees and costs "without contribution from the other" party.

Kendziorski appeals the trial court's partial denial of his motion for summary judgment, the trial court's granting of Saunders's motion for summary judgment, and the trial court's entry of final judgment without awarding him pre-judgment interest or attorney's fees.

**DISCUSSION**

Due to the complex procedural history of this case, we will clarify what issues we have been asked to consider in this appeal and which judgment has been appealed to this Court. Kendziorski originally filed suit against Marshall for fraud and obtained a judgment against him in the justice court. This judgment was appealed to the county court, and Kendziorski again obtained a judgment against Marshall. However, this action is not before us. Our appeal is limited to consideration of the subsequent suit filed by Kendziorski against Saunders in which Kendziorski claims Saunders breached the surety agreement he signed to help perfect Marshall's appeal.

In this appeal, we are being asked to consider whether Saunders is liable for all or part of the exemplary damages originally issued against Marshall, whether Saunders breached the surety agreement by failing to pay the limits specified in the appeal bond, whether Saunders is liable for attorney's fees and prejudgment interest due to this breach, and whether Saunders fraudulently entered into the surety agreement with no intention of paying under its terms and with insufficient assets to cover the limits of the bond.

5

In addition to the issues discussed above, we will also address Kendziorski's assertions that many of the defenses to liability raised by Saunders below are inapplicable or are impermissible collateral attacks on the original judgment against Marshall. Furthermore, we will address Kendziorski's alternative contention that there was no order granting Saunders's motion for summary judgment, and, therefore, the trial court erred in entering final judgment. Finally, we will address Saunders's argument that he is not liable for the exemplary damage award because the award exceeded the county court's appellate jurisdiction and was, therefore, void.

We review the granting of a summary judgment *de novo*. *Valence v. Dorsett Operating Co.*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, we take all evidence favorable to the nonmovant as true and resolve any doubts in the nonmovant's favor. *Id.* A movant is entitled to summary judgment if he demonstrates there are no genuine issues of material fact and establishes all the elements of his claim as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). When both parties move for summary judgment, the appellate court, in reviewing the judgment of the trial court, must consider both parties' summary judgment evidence, determine all questions presented, and, if the reviewing court determines the trial court erred, render the judgment the trial court should have rendered. *Valence*, 164 S.W.3d at 661.

For organizational purposes, we will first address Kendziorski's claim that the court erred in entering final judgment without a proper order. Second, we will discuss Kendziorksi's fraud claims. Third, we will address Kendziorski's breach of contract claim and the extent of Saunders's liability under the appeal bond. Fourth, we will consider the argument raised by Saunders regarding

6

the county court's appellate jurisdiction. Finally, we will discuss Kendziorski's claim for attorney's fees and prejudgment interest.

**Entry of Final Judgment**

On appeal, Kendziorski asserts that the court committed reversible error by entering a final judgment when no order was signed by the court granting Saunders's summary judgment motion and "disposing of all contested issues." Specifically, he argues that the letter issued by the court does not constitute an order from the court because the letter directed Mr. Saunders to prepare an order.

The language used in a judgment can make it final. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). A judgment is final when the intent to finally dispose of the case is unequivocally expressed and when the judgment disposes of all remaining parties and claims. *Id.*

Even if the letter did not constitute an order, the court's final judgment indicated that Saunders's motion for summary judgment had been granted. Further, the judgment specified that it "disposes of all parties and all claims in their entirety and is appealable" and contained all the necessary elements for a final judgment including the names of the parties and "for and against whom the judgment is rendered." *See* Tex. R. Civ. P. 306; *see also City of Austin v. Castillo*, 25 S.W.3d 309, 314 (Tex. App.—Austin 2000, pet. denied). Therefore, we hold that the judgment rendered by the court was final and appealable.

Accordingly, we conclude that the trial court's issuance of a final judgment was proper and overrule this issue on appeal.

**Fraud**

In addition, Kendziorski contends that the trial court erred by granting Saunders's summary judgment motion on the ground that Saunders did not commit fraud. Specifically, Kendziorski insists that Saunders misrepresented his intention to pay on the appeal bond and misrepresented that he had sufficient assets to cover the amount of the appeal bond. Kendziorski asserts that he relied on Saunders's promise to pay and urges that he would have objected to the bond had he known Saunders did not intend to pay on the bond.

A claim for fraud is not available under the circumstances of this case. The court was not required to obtain Kendziorski's approval regarding the designation of Saunders as a surety on the appeal bond. Marshall satisfied the requirements for filing an appeal, the court approved the appeal bond, and the appeal was perfected. *See* Tex. R. Civ. P. 571, 573. Kendziorski was not induced into entering into an agreement by a representation from Saunders. *Cf. Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998) (without misrepresentation, there is no fraud). Further, Saunders stated in an affidavit that he had sufficient funds to pay the amount of the appeal bond and submitted a copy of a cashier's check made payable for the full amount of the appeal bond and a copy of his bank statement at the time the appeal bond was signed indicating he had sufficient funds to cover the limits of the appeal bond. Accordingly, we affirm the portion of the judgment of the county court that concluded Saunders was not liable for fraud.

**Breach of the Surety Agreement**

Kendziorski also asserts that Saunders breached the surety agreement by failing to pay the full amount of the appeal bond. A surety is an individual who has undertaken the obligation

8

of another owed to an obligee. *See Carter Real Estate & Dev., Inc. v. Builder's Serv. Co.*, 718 S.W.2d 828, 830 (Tex. App.—Austin 1986, no writ) (quoting Restatement of Security § 82 (1941)). When interpreting surety bonds and determining a surety's liability, we apply common law principles of contract. *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.). A party breaches a contract if it fails to perform an act it promised to perform. *Methodist Hosps. of Dallas v. Corporate Communications, Inc.*, 806 S.W.2d 879, 883 (Tex. App.—Dallas 1991, writ denied). In the case of a judicial bond, the surety's undertaking is a contract that the surety will, failing a reversal, pay the judgment rendered against the appellant. *Carter Real Estate*, 718 S.W.2d at 830.

The liability of the surety and the intent of the parties are generally determined by the language of the bond. *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992); *Pavecon*, 159 S.W.3d at 222. Surety agreements are strictly construed, and sureties are bound only by the precise terms of the contract they have secured. *See Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464 (Tex. 1991). Accordingly, "sureties are no further bound than they have contracted to be." *Amwest Sur. Ins. Co. v. Graham*, 949 S.W.2d 724, 726 (Tex. App.—San Antonio 1997, writ denied) (quoting *Trent v. Rhomberg*, 66 Tex. 249, 18 S.W. 510, 512 (1886)). If it appears from the terms of the surety contract that the surety has contracted to be bound by a particular judgment that may be rendered against his principal, "'it is conclusive against him, although he was not a party to the suit in which the judgment was obtained.'" *Bobbitt v. Womble*, 708 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1986, no writ) (quoting *Browne v. French*, 22 S.W. 581, 583 (Tex. Civ. App.—Austin 1893, no writ)).

9

As a surety, Saunders was liable for up to the amount specified in the appeal bond. *See A.V.A. Servs., Inc. v. Parts Indus. Corp.*, 949 S.W.2d 852, 854 (Tex. App.—Beaumont 1997, no writ) (under rule of civil procedure 752, concerning forcible entry and detainer proceedings, court may award damages up to full amount of appeal bond to cover damages and costs).

*Saunders's Defenses*

In response to Kendziorski's motion for summary judgment, Saunders raised the following defenses: (1) the surety agreement was ambiguous and, therefore, his belief, as expressed in his affidavit, that he was not liable for exemplary damages may be considered as parole evidence; (2) holding him liable for an exemplary damage award would be unconscionable; (3) he was mistaken about the terms of the agreement when he entered it; (4) holding him liable for the exemplary damages would violate due process; (5) he was not provided notice of the possibility of being liable for exemplary damages; and (6) the county court impermissibly rendered judgment against the estate of Marshall because Marshall died before the judgment was signed and because exemplary damages may not be awarded against an estate. In his motion for summary judgment, Saunders contended that the exemplary damage claim was an impermissible additional ground of recovery filed in violation of rule 574a.[3] On appeal, Saunders asserts that he is not liable for exemplary damages because the original judgment entered against Marshall in the county court exceeded its appellate jurisdiction, which rendered the exemplary damage award void. We will

---

[3] Although Saunders contended that he was not liable for the exemplary damage award for the reasons specifically listed, he did not argue that a surety can never be liable for exemplary damages.

10

address the first five defenses in the order given and address the remaining defense, the claim raised in Saunders's motion for summary judgment, and the responsive argument specified on appeal together.

*Ambiguity*

In his response, Saunders argued that the agreement was ambiguous regarding whether he would be liable for exemplary damages. Further, he asserted that he believed, based on various rules and statutes governing the appellate jurisdiction of the county court, that he would only be liable for economic damages and court costs. Finally, he argues that his belief, as expressed in his affidavit, may be considered to ascertain the intent of the parties entering the agreement.

In support of these contentions, Saunders cited to various rules and statutes governing the jurisdiction of justice courts and governing appeals from justice courts and insisted that these rules and statutes conflict with one another and render a surety's liability under an appeal bond unclear. Specifically, Saunders asserted that, under the governing statutory framework, a surety may be subjected to greater liability than a principal because the jurisdictional limit of a justice court is $5,000, but an appeal from the justice court is tried de novo and requires a surety to sign an appeal bond for twice the amount of the original judgment, even if that amount exceeds the $5,000 limit. *See* Tex. Gov't Code Ann. § 27.031(a) (West 2004) (specifying $5,000 jurisdictional limit for justice courts); Tex. Civ. Prac. & Rem. Code Ann. § 31.005 (West 1997) ("[a] judgment or determination of fact or law in a proceeding in . . . justice of the peace court is not res judicata . . . in a county court . . . ."); Tex. R. Civ. P. 571 (requiring sureties to sign appeal bond for double amount of judgment rendered in justice court for perfection of appeal), 574a (allowing party appealing judgment of justice

11

court to plead any new matter not previously presented), 574b (appeal from justice court tried de novo). Saunders urged that a principal's liability will not exceed the original jurisdictional limit, but a surety may be liable for up to twice this amount. Saunders insisted that, given the appellate jurisdictional limit of the county court, the governing framework creates an ambiguity regarding the extent of a surety's liability and averred that the terms of the appeal bond are susceptible to his interpretation in which sureties are liable only for compensatory damages and courts costs. Further, Saunders contended that his belief as to the extent of his liability was reasonable given that exemplary damages were not specifically mentioned prior to his signing the surety agreement and may be considered when interpreting the agreement.

We disagree. The determination of whether a contract is ambiguous is a question of law. *General Agents Ins. Co. v. Arredondo*, 52 S.W.3d 762, 766 (Tex. App.—San Antonio 2001, pet. denied). If a contract is subject to more than one reasonable interpretation, the contract is ambiguous. *Id.* However, a contract is unambiguous if it can be given a definite or certain meaning, and conflicting interpretations of a contract, without more, do not create an ambiguity. *See id.* Further, if the contract is capable of being given a definite legal meaning, parole evidence is generally not admissible to create an ambiguity. *Lynx Exploration & Prod. Co. v. 4-Sight Operating Co.*, 891 S.W.2d 785, 787 (Tex. App.—Texarkana 1995, writ denied).

The surety agreement specified that Saunders agreed to "pay off and satisfy the judgment which may be rendered against [Marshall] on appeal" up to $5,521. Neither the agreement nor the rule requiring an appeal bond expressly limits the type of damages that may be recovered from a surety to actual damages and court costs. *Cf. Geters*, 834 S.W.2d at 50 (statute

12

permitted recovery of "damages" from surety of motor vehicle's bond; court concluded that statute and common meaning of word "damages" did not restrict type of recovery to particular types of damages and concluded that, when legislature has intended such a limitation, it provides the limitation by statute). The agreement is open to only one reasonable interpretation: Saunders agreed to pay up to $5,521 to Kendziorski in the event Marshall did not prevail on appeal and in the event Kendziorski was unable to collect from Marshall. Because the agreement is capable of being given a definite legal meaning, we may not consider the beliefs expressed in Saunders's affidavit to create an ambiguity in an otherwise unambiguous agreement.

We also disagree with Saunders's assertion that the statutory framework governing the jurisdiction of justice courts and appeals from justice courts renders the agreement ambiguous or can be interpreted as subjecting sureties to greater liability than principals. Because an appeal from the justice court is tried de novo, the amount of the judgment rendered on appeal may be larger or smaller than that rendered in the justice court. However, the county court's appellate jurisdiction is confined within the limits of the justice court's jurisdiction, *Rice v. Pinney*, 51 S.W.3d 705, 708 (Tex. App.—Dallas 2001, no pet.), and a county court may not issue an award against a principal on appeal that exceeds the jurisdiction of the justice court unless the additional damages were sustained as a result of the passage of time, *Crumpton v. Stevens*, 936 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, no writ). Although the principal may be liable for a larger damage award on appeal than that originally issued and for an amount greater than the justice court's jurisdictional limit in certain circumstances, the surety will not be liable for an amount that is larger than what the principal

13

would be liable for and will not be liable for an amount over that specified in the bond. *Cf. Amwest*, 949 S.W.2d at 726.

For all the reasons specified, we hold that the agreement is not ambiguous.

*Unconscionability*

In his response, Saunders also asserted that requiring a surety to be liable for exemplary damages would subject sureties to open-ended liability and would render surety agreements unconscionable.

Whether a contract is unconscionable is a question of law for the court to decide. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 816 (Tex. App.—Dallas 1999, no pet.). In general, the term "unconscionability" describes a contract that is unfair because of its overall one-sidedness or the gross one-sidedness of its terms. *Id.* The principle underlying a determination of whether a contract is unconscionable is the prevention of oppression and unfair surprise, not the reallocation of risks. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001). The basic test for determining whether a contract is unconscionable is whether, given the parties' general commercial background and the commercial needs of the case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the contract was made. *See id.*

None of the factors that might weigh in favor of a finding of unconscionability are present in this case. The appeal bond is not so one-sided that it is unfair and interpreting the bond as requiring Saunders to be liable for exemplary damages does not result in unfair surprise to Saunders. At the time the appeal bond was made, Saunders was serving as Marshall's attorney. The

14

terms of the appeal bond and the extent of Saunders's liability were clear: Saunders was liable for up to $5,521 of a "judgment" rendered against Marshall. Nothing in the appeal bond limited Saunders's liability to actual damages and court costs. The amount of the appeal bond was specified by statute, and the language used in the appeal bond tracked the language in rule 571. *See id.* (under rule 571, appellant is required to file appeal bond payable to appellee "conditioned that appellant shall prosecute his appeal to effect, and shall pay off and satisfy the judgment which may be rendered against him on appeal").

Accordingly, we conclude that holding Saunders liable for exemplary damages does not render the surety agreement unconscionable.

*Unilateral Mistake*

In addition to his previous defenses, Saunders raised the affirmative defense of unilateral mistake in his response. He argued that he was mistaken about the extent of his liability on the surety agreement and that the mistake would have been made despite ordinary care because the mistake could not have been foreseen given the ambiguous nature of the contract and the alleged conflict in laws previously discussed.

In general, a unilateral mistake by one party to an agreement is not a ground for relief when the mistake was not known to the other party or induced by the other party. *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1973); *Welkener v. Welkener*, 71 S.W.3d 364, 366 (Tex. App.—Corpus Christi 2001, no pet.). A person who signs a contract is presumed to know the contents of the contract. *City of Emerald v. Peel*, 920 S.W.2d 398, 402 (Tex. App.—Houston [1st Dist.] 1996, no

15

writ). In general, to be entitled to equitable relief on the grounds of unilateral mistake, the claimant must show that:

    (1)   the mistake is of so great a consequence that to enforce the contract as made would be unconscionable;

    (2)   the mistake relates to a material feature of the contract;

    (3)   the mistake must have been made regardless of the exercise of ordinary care; [and]

    (4)   the parties can be placed in status quo in the equity sense; i.e., rescission must not result in prejudice to the other party except for the loss of his bargain.

*Northern Nat'l Gas Co. v. Chisos Joint Venture I*, 142 S.W.3d 447, 456 (Tex. App.—El Paso 2004, no pet.) (quoting *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (1960); *Roland v. McCullough*, 561 S.W.2d 207, 213 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.)).

        As discussed in the previous sections, there is no conflict in the laws governing an appeal from the justice court, nor were the terms of the appeal bond ambiguous. The bond clearly specified that Saunders would be liable for a "judgment" rendered against Marshall on appeal and limited the amount of his liability. Further, nothing in the appeal bond specified that Saunders would be liable only for court costs and actual damages. Kendziorski did not induce Saunders into his mistaken belief, and, as we previously concluded, holding Saunders liable for exemplary damages is not unconscionable. Accordingly, we hold that Saunders is not entitled to equitable relief on the ground that he was mistaken about the extent of his liability under the surety agreement.

*Due Process*

In his response, Saunders also claimed that holding him liable for exemplary damages would violate the due process clause of the Fourteenth Amendment of the United States Constitution by subjecting him to open-ended liability.

Saunders signed a surety agreement, in which he agreed to be liable for any judgment rendered against Marshall in the county court. The agreement specified that Saunders's maximum possible liability was $5,521. Regardless of the size of the exemplary damage award the court could have entered, Saunders's personal liability would not have exceeded the amount specified. Accordingly, as described earlier, holding sureties liable for exemplary damage awards does not subject them to open-ended liability. The fact that the judgment included punitive damages as well as actual damages does not invoke due process concerns that would not be present if the judgment had only included actual damages.

Accordingly, we conclude that holding Saunders liable for exemplary damages does not violate his due process rights.

*Notice*

In his response, Saunders additionally contended that he was not liable for exemplary damages because he was not provided notice of that possibility and because holding him liable would alter the terms of the appeal bond.

In support of his assertion, Saunders cited to *Lawyers Surety Corp. v. Riverbend Bank*, 966 S.W.2d 182, 184 (Tex. App.—Fort Worth 1998, no pet.), in which the court concluded that a surety was not required to pay under the terms of a settlement agreement, entered into without

the surety's knowledge, that altered the terms of the surety agreement without the surety's consent. *Lawyers Surety* is inapplicable. In this case, Marshall did not enter into an agreement that altered the terms of the surety bond without Saunders's consent. Rather, Saunders entered into an agreement in which he agreed to be liable to pay up to $5,521 in the event judgment was rendered against Marshall, and this agreement was not changed prior to the rendition of a judgment against Marshall.

In addition, as a surety, Saunders did not have to receive notice of the possibility of being held liable for exemplary damages to be liable for the judgment rendered against Marshall. *Cf. Bobbitt*, 708 S.W.2d at 560 (no notice of underlying suit or opportunity to defend suit need be given to surety for surety to be bound by judgment).

*Marshall's Death, Rule 574a, and the Jurisdiction of the County Court*

Further, Saunders contended in his response that the county court impermissibly rendered judgment for exemplary damages against Marshall's estate because Marshall died before the judgment was signed. Saunders asserted that exemplary damages may not be rendered against the estate of an individual and, therefore, he is not liable for the exemplary damage award. In his motion for summary judgment, Saunders argued that the exemplary damages claim, which Kendziorski pleaded for the first time in the appeal of the original lawsuit, was a new ground of recovery barred by the rules of civil procedure. *See* Tex. R. Civ. P. 574a. On appeal, Saunders asserts that he cannot be held liable for exemplary damages because, in the original suit against Marshall, the county court exceeded its jurisdiction by issuing a damage award that was in excess of $5,000. Therefore, Saunders insists the exemplary damages award is void.

18

All of these assertions constitute collateral attacks on the judgment previously rendered against Marshall. *Cf. Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003). A direct attack on a judgment, such as an appeal, is brought for the purpose of attempting to change the judgment. *Austin Indep. Sch. Dist.*, 495 S.W.2d at 881; *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.). A collateral attack, on the other hand, "'is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose.'" *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988) (quoting *Ranger Ins. Co.*, 530 S.W.2d at 167), *overruled on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996).

In general, if the court entering judgment has jurisdiction over both the case and the parties and if the court does not act outside its capacity as a court, the judgment entered by the court may not be collaterally attacked. *See Reiss*, 118 S.W.3d at 443. The judgment of a court of general jurisdiction may be collaterally attacked on the grounds that the court has: (1) no jurisdiction over a party or over his property, (2) no jurisdiction over the subject matter of the suit, (3) no jurisdiction to enter the particular judgment entered, or (4) no capacity to act as a court. *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973); *Ranger Ins. Co.*, 530 S.W.2d at 167. Claims that the judgment is incorrect, other than jurisdictional claims, may render a judgment voidable, in which case the judgment may be corrected through the ordinary appellate process, but may not be used to collaterally attack a judgment. *Cf. Reiss*, 118 S.W.3d at 443.

The current suit was brought for the purpose of determining Saunders's liability for the judgment originally rendered against Marshall, not to appeal the former judgment against Marshall. Even if the trial court erred in light of the first two defenses, the judgment would be

19

voidable, not void, because the trial court had jurisdiction over the parties and the subject matter of the case. The judgment against Marshall was final, and Saunders may not collaterally attack the judgment on the grounds that the court impermissibly issued an exemplary damage award against Marshall's estate or that the exemplary damage claim was an impermissible additional ground of recovery filed in violation of rule 574a.

However, Saunders may collaterally attack the judgment rendered against Marshall on the ground that the county court exceeded its jurisdiction. Justice courts have jurisdiction over "civil matters in which exclusive jurisdiction is not in the district or county court and in which the amount in controversy is not more than $5,000, exclusive of interest." Tex. Gov't Code Ann. § 27.031(a)(1). The amount in controversy is generally determined by looking at the allegations in the petition. *Garza v. Chavarria*, 155 S.W.3d 252, 255 (Tex. App.—El Paso 2004, no pet.). When the petition does not demonstrate the absence of jurisdiction, the petition should be liberally construed in favor of jurisdiction. *Id.*

The judgment of a justice court may be appealed to a county court, which will try the case de novo. Tex. Gov't Code Ann. § 26.042(e) (West 2004); Tex. R. Civ. P. 574b. However, a county court's appellate jurisdiction is confined to the jurisdictional limits of the justice court; the county court has no jurisdiction over an appeal unless the justice court had jurisdiction. *Rice*, 51 S.W.3d at 708.

There is nothing in the record to indicate that Kendziorski specifically pleaded an amount that was outside the jurisdiction of the justice court or the appellate jurisdiction of the county court. *See Garza,* 155 S.W.3d at 256 (court may lose jurisdiction over new cause of action for

20

damages if petition alleges damages that exceed jurisdictional limits).  However, in the case against

Marshall, the county court issued a judgment in excess of $5,000.  As discussed previously, a county

court may not issue an award that exceeds the jurisdictional limits of the justice court unless

additional damages have been sustained as a result of the passage of time, such as attorney's fees.

*See*, *e.g.*, *Crumpton*, 936 S.W.2d at 477 (pleading of attorney's fees on appeal to county court in

amount greater than original jurisdiction did not deprive county court of jurisdiction).  The county

court award included compensatory damages, exemplary damages, and court costs.  None of these

damages arose from the passage of time.[4]

    Further, unlike other similar statutes, the statute specifying the jurisdiction of justice

courts only excludes interest from the $5,000 limitation.  *Compare* Tex. Gov't Code Ann.

§ 27.031(a)(1) (justice courts have jurisdiction when "amount in controversy is not more than

$5,000, exclusive of interest"), *with id.* § 25.0003(c)(1) (West 2004 & Supp. 2005) (county courts

have concurrent jurisdiction with district courts over civil cases "in which the matter in controversy

exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages and

penalties, and attorney's fees and costs").  Because the statute does not specifically exclude punitive

damages or court costs, they should be included when determining a county court's appellate

jurisdictional limit.  *Cf. Garza*, 155 S.W.3d at 256 (statute does not exclude punitive damages or

attorney's fees so they should be included when calculating amount in controversy).

---

  [4] Exemplary damages do not result from the passage of time; rather, they are awarded to punish a defendant's past behavior and to deter others from engaging in a similar manner.  *See*, *e.g.*, *Owens-Corning Fiberglass Corp. v. Malone*, 977 S.W.2d 35, 39-40 (Tex. 1998).

Although the judgment issued by the county court exceeded its jurisdictional limitations, this did not deprive the court of jurisdiction of the case nor render the entire judgment void. *Cf. Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996) (supreme court stated that it could not conclude that lower court lost jurisdiction over claim even though it issued award that was 150% over its jurisdictional limit); *Kubena v. Hatch*, 193 S.W.2d 175, 177 (Tex. 1946) (judgment may be void in part and valid in part); *Oropeza v. Valdez,* 147 S.W.3d 480, 482-83 (Tex. App.—San Antonio 2004, no pet.) (court concluded that county court did not lose jurisdiction over case by issuing award in excess of jurisdictional limits of small claims court and concluded judgment not void). Rather, only the portion exceeding the jurisdictional limitation is void. *See Carlson's Hill Country Beverage v. Westinghouse Rd. Joint Venture,* 957 S.W.2d 951, 954, 956 (Tex. App.—Austin 1997, no pet.) (in forcible detainer action, court concluded claimant appealing judgment of justice court confined to jurisdictional limits of justice court for damages corresponding to rent before original suit filed and reformed judgment accordingly); *Dews v. Floyd*, 413 S.W.2d 800 (Tex. Civ. App.—Tyler 1967, no writ) (court concluded that portion exceeding jurisdiction of court, not entire award, was void).

Accordingly, we conclude that the portion of the original judgment issued against Marshall that is in excess of $5,000 is void because it exceeded the court's jurisdictional limit. Further, because we have concluded that none of the defenses raised by Saunders relieves him of liability under the terms of the surety agreement, we hold that Saunders breached the agreement by failing to pay on the bond. We therefore reverse the portion of the county court's judgment that concluded Saunders did not breach the surety agreement and was not liable for exemplary damages.

22

In addition, because we have concluded the original judgment against Marshall exceeded the county court's jurisdiction, we hold that Saunders's liability as a surety is limited to $5,000 and that Saunders's liability for exemplary damages is, accordingly, limited to $2,266.56.[5]

**Attorney's fees and Pre-judgment Interest**

On appeal, Kendziorski also contends that the trial court erred in not awarding him attorney's fees and pre-judgment interest as a result of Saunders's breach of the surety agreement. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997) (allowing recovery of attorney's fees in contract claim); *see also Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 427-28 (Tex. 1995) (surety on construction bond liable for attorney's fees for own failure to pay under terms of bond); *Gramercy Ins. Co. v. Acadia Fin. Ltd.*, 96 S.W.3d 320, 327-28 (Tex. App.—Austin 2001, pet. denied) (surety on bond issued under transportation code liable for attorney's fees for failure to pay when judgment rendered against principal).

Because we have reversed the judgment of the trial court and concluded that Saunders breached the surety agreement by failing to pay a portion of the exemplary damage award, we remand the case to the county court to consider what amount of attorney's fees and pre-judgment interest, if any, should be awarded.

---

[5] Saunders's liability for $2,266.56 in exemplary damages is based on the facts that we have upheld the county court's determination that Saunders was liable for $2,733.44 of the judgment rendered against Marshall and that Saunders's total liability is $5,000.

**CONCLUSION**

We affirm the county court's judgment regarding Saunders's liability for fraud. However, we reverse the part of the judgment that concluded Saunders did not breach the surety agreement and was not liable for exemplary damages and render judgment that Saunders is liable for $1,334 in compensatory damages, $1,399.44 in court costs, and $2,266.56 in exemplary damages. Further, we remand this case for a determination of whether Kendziorski is entitled to attorney's fees and pre-judgment interest.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   March 30, 2006